### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### MIDLAND DIVISION

| | |
|---|---|
| KELLY SCHNELLE, Individually and for Others Similarly Situated, | Case No. _____ |
| | Jury Trial Demanded |
| v. | FLSA Collective Action |
| CHEVRON USA, INC. | Class Action |

### ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

#### SUMMARY

1.      Kelly Schnelle (Schnelle) brings this lawsuit against Chevron USA, Inc. (Chevron) to recover unpaid overtime wages and other damages owned under the Fair Labor Standards Act (FLSA) and the New Mexico Minimum Wage Act, NMSA §50-4-19, et. seq. (NMMWA).

2.      Chevron is one of the largest energy providers in the United States.

3.      Schnelle and the other Chevron employees regularly work more than 40 hours in a week.

4.      But Chevron  does not pay them overtime for hours worked in excess of 40 hours in a single workweek.

5.      Instead of paying overtime, Schnelle received a daily rate with no overtime compensation.

#### JURISDICTION AND VENUE

6.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

7.      The Court has supplemental jurisdiction over the NMMWA claims pursuant to 28 U.S.C. § 1367 because they arise from the same common nucleus of operative facts as the FLSA claims asserted.

8.      Venue is proper in this Court because Chevron conducts substantial business in this District and Division.

9.      Schnelle performed work for Chevron in and around Midland, Texas, which is in this District and Division.

## THE PARTIES

10.     Schnelle worked for Chevron from June 2013 until April 2019.

11.     Schnelle was a Turnaround Coordinator for Chevron.

12.     Schnelle would provide inspection oversight in natural gas plants operated by Chevron.

13.     Schnelle provided asset integrity audits and inspection oversight throughout multiple Chevron facilities in the Southwest.

14.     Schnelle worked for Chevron in Texas (Midland, Ozona, North Texas), New Mexico (Jal), and Colorado.

15.     Throughout his employment with Chevron, Schnelle was paid a day-rate with no overtime compensation.

16.     Schnelle's consent to be a party plaintiff is attached as Exhibit A.

17.     Schnelle brings this action on behalf of himself and all other similarly situated workers who were paid through Chevron's day-rate scheme.

18.     Each of these workers were paid a flat amount for each day worked.

19.     Chevron failed to pay them overtime for hours worked in excess of 40 hours in a workweek in accordance with the FLSA.

20.     The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All individuals working for, or on behalf of, Chevron who were paid a day-rate with no overtime in the past 3 years (FLSA Class**

Members).

21.     The Putative Class Members are easily ascertainable from Chevron's business records.

22.     Second, Schnelle represents a class of similarly situated oilfield workers under the NMMWA pursuant to Federal Rule of Civil Procedure 23.

23.     The NMMWA Class is defined as:

> **All individuals working for, or on behalf of, Chevron who were paid a day-rate with no overtime in the past 3 years (the New Mexico Class).**

24.     The FLSA and New Mexico Class Members are referred to collectively as the Putative Class Members.

25.     The Putative Class Members are easily ascertainable from Chevron's business and personnel records.

26.     Defendant Chevron is a California corporation that may be served with process by serving its registered agent: **The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801**.

## COVERAGE UNDER THE FLSA

27.     At all times hereinafter mentioned, Chevron has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

28.     At all times hereinafter mentioned, Chevron has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

29.     At all times hereinafter mentioned, Chevron has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce - such as oilfield equipment,

3

hand tools, computers, automobiles, and cell phones - by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $10,000,000.

30.     At all times hereinafter mentioned, Schnelle and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

31.     As will be shown through this litigation, Chevron treated Schnelle the Putative Class Members as employees and uniformly dictated the pay practices Schnelle and its other employees were subjected to.

FACTS

32.     Chevron is a global energy company.

33.     To provide its services, Chevron hires individuals (like Schnelle) to perform work.

34.     Many of these individuals worked for Chevron on a day-rate basis and make up the proposed Putative Class.

35.     These employees perform similar job duties and are subjected to the same or similar illegal pay practices for similar work.

36.     Because of Chevron's day-rate pay practice, Schnelle and the Putative Class Members are paid a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek).

37.     Because of Chevron's day-rate pay practice Schnelle and the Putative Class Members failed to receive overtime pay for hours that they worked in excess of 40 hours in a workweek.

38.     For example, throughout Schnelle's employment with Chevron, he was paid on a day-rate basis.

39.     Schnelle and the Putative Class Members normally worked 12 or more hours a day.

40.     Schnelle and the Putative Class Members would regularly work 6 to 7 days a week.

41.     The number of hours Schnelle and the Putative Class Members worked is easily obtainable in Chevron's records.

42.     Chevron never guaranteed Schnelle and the Putative Class Members a salary.

43.     While working for Chevron, Schnelle or the Putative Class Members were not paid on a salary basis.

44.     Schnelle was required to report the days worked to Chevron.

45.     Schnell recorded all of his time on Chevron timesheets.

46.     Schnelle reported directly to Chevron managers and supervisors.

47.     Schnelle was hired directly by Chevron, but was told to use a staffing company named Airswift.

48.     Schnelle wore personal protective equipment which contained Chevron's logo.

49.     The work Schnelle performed was an essential and integral part of Chevron's core business.

50.     Chevron directly determined Schnelle's and the Putative Class Members' rates of pay and their work schedule.

51.     Schnelle and the Putative Class Members were required to record their time on Chevron timesheets.

52.     The Putative Class Members worked hours similar to Schnelle's.

53.     During Schnelle's employment with Chevron, it exercised control over all aspects of his job.

54.     Chevron controlled all the significant or meaningful aspects of the job duties performed by Schnelle and the Putative Class Members.

55.     Chevron controlled all aspects of Schnelle's and the Putative Class Members' job duties by enforcing mandatory compliance with Chevron's policies and procedures.

56.     The Putative Class Members were denied overtime by the same illegal pay practice (Chevron's day-rate pay scheme) that resulted in Schnelle being denied overtime wages.

57.     Chevron's day-rate pay scheme does not guarantee Schnelle and the Putative Class Members a salary.

58.     As such, Chevron's day-rate policy violates the FLSA because these workers are non-exempt.

59.     Chevron's day-rate scheme violates the FLSA because Schnelle and the Putative Class Members did not receive any overtime pay for hours worked over 40 hours each week.

60.     Despite knowing the FLSA and NMMWA's requirements, Schnelle and the Putative Class Members were not paid overtime for hours worked in excess of 40 hours in a single workweek while working for Chevron.

61.     Despite knowing the FLSA and NMMWA required overtime pay to Schnelle and the Putative Class Members, they did not get paid overtime.

62.     Chevron knew, or showed reckless disregard for whether, its day-rate pay policy violated the FLSA and NMMWA.

### FLSA VIOLATIONS – COLLECTIVE ACTION

63.     As set forth herein, Chevron has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their employment in excess 40 hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

64.     Chevron knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the FLSA Class Members overtime compensation.

65.   Chevron's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

66.   Accordingly, Schnelle and the FLSA Class Members are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs. 29 U.S.C. § 216(b).

### NMMWA VIOLATIONS – CLASS ACTION

67.   Schnelle brings this claim under the NMMWA as a Rule 23 class action.

68.   The conduct alleged violates the NMMWA (NMSA § 50-4-22).

69.   At all relevant times, Chevron was subject to the requirements of the NMMWA.

70.   At all relevant times, Chevron employed Schnelle and each member of the New Mexico Class as an "employee" within the meaning of the NMMWA.

71.   The NMMWA required Chevron to pay its employees at 1 and ½ times the regular rate of pay for hours worked in excess of 40 hours in any one week.

72.   Schnelle and each member of the New Mexico Class are entitled to overtime pay under the NMMWA.

73.   Chevron had a policy and practice of failing to pay Schnelle and each member of the New Mexico Class overtime for hours worked in excess of 40 hours per workweek.

74.   Schnelle and each member of the New Mexico Class seek unpaid overtime in amount equal to 1 and ½ times their regular rates of pay for hours worked in excess of 40 in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

75.   Schnelle and each member of the New Mexico Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Chevron, as provided by the NMMWA.

76.     The improper pay practices at issue were part of a continuing course of conduct, entitling Schnelle and New Mexico Class Members to recover for all such violations, regardless of the date they occurred.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

77.     Schnelle incorporates all previous paragraphs and alleges that the illegal pay practices Chevron imposed on Schnelle were likewise imposed on the Putative Class Members.

78.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and the NMMWA.

79.     On information and belief, the New Mexico Class contains more than 50 members.

80.     Numerous other individuals who worked with Schnelle indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by the FLSA and the NMMWA.

81.     Based on his experiences and tenure with Chevron, Schnelle is aware that Chevron's illegal practices were imposed on the Putative Class Members.

82.     The Putative Class Members were all not afforded the overtime compensation when they worked in excess of 40 hours per week.

83.     Chevron is the employer of Schnelle and the Putative Class Members.

84.     Chevron's failure to pay wages and overtime compensation at the rates required by law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

85.     Schnelle's experiences are therefore typical of the experiences of the Putative Class Members.

86.     The specific job titles or precise job locations of the Putative Class Members do not prevent class or  collective treatment.

87.     Schnelle has no interests contrary to, or in conflict with, the Putative Class Members.

88.     Like each Putative Class Member, Schnelle has an interest in obtaining the unpaid overtime wages owed to him under the FLSA and the NMMWA.

89.     A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

90.     Absent this action, many Putative Class Members likely will not obtain redress of their injuries and Chevron will reap the unjust benefits of violating the FLSA and NMMWA.

91.     Furthermore, even if some of the Putative Class Members could afford individual litigation against Chevron, it would be unduly burdensome to the judicial system.

92.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

93.     The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

a.     Whether Chevron employed the Putative Class Members within the meaning of the FLSA and NMMWA;

b.     Whether Chevron's day rate pay scheme meets the salary-basis test;

c.     Whether Chevron's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

d.     Whether Chevron's violation of the FLSA and NMMWA was willful; and

e.     Whether Chevron's illegal pay practices were applied uniformly to all Putative Class Members.

94.     Schnelle's claims are typical of the claims of the Putative Class Members. Schnelle and the Putative Class Members sustained damages arising out of Chevron's illegal and uniform employment policy.

95.     Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts.

96.     Therefore, this issue does not preclude class or collective action treatment.

### JURY DEMAND

97.     Schnelle demands a trial by jury.

### RELIEF SOUGHT

98.     WHEREFORE, Schnelle prays for judgment against Chevron as follows:

a.      An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to the FLSA Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.      For an Order designating the New Mexico Class as a class action pursuant to Fed. R. Civ. P. 23;

c.      For an Order appointing Schnelle and his counsel as Class Counsel to represent the interests of the FLSA and New Mexico Classes;

d.      For an Order pursuant to Section 16(b) of the FLSA finding Chevron liable for unpaid back wages due to Schnelle and the FLSA Class Members for liquidated damages equal in amount to their unpaid compensation;

e.      For an Order pursuant to the NMMWA finding Chevron liable for unpaid back wages due to Schnelle and the New Mexico Class Members for liquidated damages and treble damages;

f.   For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

g.   For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: _/s/ Michael A. Josephson_____
**Michael A. Josephson**
State Bar No. 24014780
**Andrew W. Dunlap**
State Bar No. 24078444
**Richard M. Schreiber**
State Bar No. 24056278
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH, PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**